and welcome aboard Council. The case is 21-6015 United States v. Anthony, I guess Part 2. We had Part 1 earlier this term and this is Part 2 on restitution. So for the government is Miss Anderson and you can unmute and proceed. Thank you. Thank you, Your Honor. May it please the court. I am Mackenzie Anderson on behalf of the United States. I would like to reserve at least five minutes for rebuttal. The district court abused its discretion when it ordered zero dollars in restitution when the parties all agree that trafficking victims like 14-year-old R.W. suffer additional losses with each occurrence of trauma. In the same way, this court in Anthony 1 said a district court cannot simply rubber stamp a victim's claim of loss because it's difficult to distinguish between past and present harms. The district court should not have simply rubber stamped the defendant's claim of no loss because it's difficult to distinguish between past and present harms. By ignoring this court's imperative and the statutory mandate and ordering no restitution, the district court abused its discretion. After Anthony 1, Justice Gorsuch wrote the Supreme Court's decision in Bostock and clearly described the but-for causation standard that this court adopted in Anthony 1. He said a defendant like Anthony cannot avoid liability just by citing some other factor that contributed to the harm. He noted that often events have multiple but-for causes and he described but-for causation at times as a sweeping and expansive standard, distinguishing it from more stringent standards that Congress has imposed for other things where there has to be a sole factor or primary factor to cause whatever the result is. If I could jump in here and of course we have Judge Phillips who can definitively tell us what Anthony 1 meant, but you know it was a case that sent back, as I read it, a restitution award for a disaggregation in effect. Some type of tailoring to the actual losses that were caused by a specific defendant, kind of broadly put. And I get that and so it seems like we have both a substantive question here, did the district court abuse its discretion in awarding zero? And a procedural question and that is did the government meet its burden of proof in establishing actual losses that were reasonably calculated here? And starting on the procedural piece, I look at the MESA report and I think it can be interpreted to fail to disaggregate the losses inflicted by Mr. Anthony versus by the other just stick with me. I know you disagree with that, but if there was a failure of proof because the losses weren't disaggregated after the district court rejected the MESA report, what was she to do? I mean did she have some, I mean her choices I guess would be to rely on the report and possibly face a reversal for that under Anthony 1. She could have allowed the government a do-over explaining why she thought the MESA report was inadequate or I guess I think you might be arguing that she should have come up with her own either allocation or her own losses. And I think the district court judge would probably say that's not my job to figure out a methodology. You gave me a bad methodology if you want to go in. I know Dobbert doesn't strictly apply, but once there's no methodology for her to plug in a formula to she's left with nothing and her default was zero. So that's a long-winded question on the procedural side, I just want you to to react to that because you know we're in effect you're saying the court abused its discretion by not accepting the government's evidence. And you know explain that more fully you know and maybe explain why the MESA report adequately complies with Anthony 1 even though it says that the therapy here would be the same regardless of the other I guess losses caused by the other perpetrators. Absolutely. So I'd like to answer both questions as to what the district court should have done if hypothetically Dr. Massar's report only provided an aggregate calculation of loss for this victim for every trauma she had experienced in her life. Which I'll get to why I don't think that is what Dr. Massar did, but assume for this hypothetical that that's what he did. Then I believe that the district court under this court's jurisprudence and Ferdman has an obligation to resolve restitution uncertainties with a view toward achieving fairness for the victim. And that's the Ferdman decision from the 10th circuit in 2015. There are a number of decisions from other circuits where the courts have held that it's an inexact science but the district court has an obligation to engage with the evidence not to just walk away and say this is too hard. So the Sanderson decision from the second circuit is an example where the second circuit affirmed a district court's decision where they cut the loss amount to a third to account for other sources of trauma or other causes that might have led to these losses. And that was affirmed because we need it doesn't have to we're not asking for exactitude but there needs to be a reasonable calculation of loss. Just to dart in on your response and not to distract you from it, but quick question which is what if the district court would have said looking at this harm at the very end of the day after all of that awful harm for months and months, $3,000 would you still be here saying that that was an abusive discretion? And if so what number would not have been an abusive discretion? I don't know the answer to that question but I think that what we're asking for is something that's meaningful not nominal. So the Monzel decision from the DC circuit in 2019 rejected a nominal calculation of loss and here we have an in-person encounter that caused trauma. Shouldn't you have to tell the district court here's how much rather than just make it a guessing game and if the district court guesses wrong in your estimation then you're in our court saying the district court abuses discretion that doesn't seem right to me. Well I think that the Monzel decision the DC circuit at least has held that the government's obligation is to demonstrate some amount of loss not to propose a mathematical calculation or specifically assert a dollar amount and it is the district court's job in its discretion to evaluate the evidence and to decide what has weight, what losses are real and not real. It is supposed to be an adversarial process in which the district court engages with the evidence and comes up with a reasonable calculation. And there are a number of decisions from other circuits where they found that a district court in denying restitution entirely had abdicated its responsibility it shouldn't be all or nothing. Can it be zero in a given case? Can restitution be zero so long as the district court issues a restitution order saying zero? Well restitution is mandatory here and under this court's decision in Anthony the fact that it is an in-person encounter should provide evidence that there are losses and I think that there's an agreement here that additional trauma imposes additional losses. When you say restitution is mandatory I'm not sure I agree with you. I think what you're saying is the court has to award some amount of money for restitution and I think what the way I'm understanding it is if the government proves restitution the court can't say I'm not going to award it for some factor the defendant doesn't have enough money or you the victim already have enough money. Are we just disagreeing on that? Well I think that at least my read is that when the government offers evidence to show evidence in support of losses the burden shifts to the defendant to dispute that amount with their own evidence and the government showed evidence of losses here and there's not a dispute that there were losses and that some therapy would be required. I do want to address briefly Judge Tinkovich's question about whether Dr. Massar actually isolated the losses here. I know you wanted some rebuttal time. This is the only case this morning so it's an important case we'll give you some time. Before we leave this issue you mentioned the phrase all or nothing. It seems that the way the government presented its case to the district court and the way you're presenting the case to us is that you rely on the Massar report for your position and you're asking for the full amount. It does seem a little bit all or nothing because you're arguing for all and I don't see you presenting any argument for something less than all, a portion. In other words you know you've been asked this morning if Dr. Massar failed to isolate harms attributable to Mr. Anthony what should the district court have done and you're saying well they should have at least awarded something but where did you even make that argument to the district court or to this court? So we have made that argument that the district court failed to exercise its discretion and cited a number of cases Dillard, Pearson. I understand the cases but have you have you even given an amount what what a range or if you can't get if you can't get all you say that well everyone agrees that that Mr. Anthony caused additional harm well okay then what value do you put on that? I mean doesn't the government have a burden to help the district court get to a number and and where did you do that? Well I believe that the government provided a variety of line items that the district court could have considered and so the district court could have considered and and awarded you know individual therapy but not group therapy or infrequent individual therapy but not intensive therapy for the first two years. But tying it to Mr. Anthony, have you satisfied your burden to show what the restitution should be for whatever additional harm Mr. Anthony caused? Yes and so I want to make sure I don't run out of time. I don't know if I should reserve my rebuttal if I should. I'll give you four minutes rebuttal no matter how long we question you. Okay. Is that enough rebuttal? That's great yes thank you. So I want to be clear that when he describes specific therapy for this specific trauma what that means because we might not be often we might not all be familiar with what trauma therapy is. So for example I have an AUSA colleague here in Oklahoma City who was recently attacked by a shark and has PTSD and she is going through therapy for that experience and what that is is it's not generic shark attack therapy where they watch jaws and then she'll be unfazed by a future shark attack right. So instead she is going step by step with a therapist through her specific traumatic experience. So the shark coming at her with its jaws open, it biting through her life vest, her husband intervening, the shark trying to take off his arm, her being unable to swim, being dragged ashore, being unable to breathe to go and run and get help. And in that specific experience is discussed in excruciating detail so that she can stop having flashbacks and nightmares about that specific trauma. If she were to be attacked by a different shark in the future, which I think is unlikely because I don't think she's ever going in the ocean again, but if she were she would need specific therapy to talk about that process. And what RW needs here according to Dr. Massar is specific therapy for the specific trauma inflicted by Mr. Anthony. So even if she is already in therapy that does not cover her needs and he is isolating the specific therapy required for this specific trauma. And it may seem large but and it may seem to outsiders like therapy would cover every instance of abuse but according to Dr. Massar who's a clinical psychologist with a tremendous amount of experience, that's not how therapy works. It's not like antibiotics where if you're on antibiotics already you don't need more if you step on a nail or something like that. So in our view we have provided evidence from someone with expertise that this caused a specific, this was specific trauma and that specific therapy is required and he has provided a calculation of what that treatment would be and the district court had an obligation after there is a showing of losses attributable to Mr. Anthony and an agreement that Mr. Anthony caused additional losses to engage with that evidence and to pick and choose some number between zero and the maximum. One way you can that the restitution amount would be identical to the amount that was was proffered here and you can you can read the report to suggest that that's what the expert thought that the amount of therapy here would even without the Anthony portion would have been this amount. And I'm still not sure the right way to think about this case but maybe you can help me. So Massar said the Anthony portion is 1.1 million. Does that mean that like the true amount of therapy is really in the you know and the other losses like you know tutoring and lost wages was really three or five or seven million dollars. And that you know this is just a subset of her other losses. Is that how you're asking us to interpret the Massar report? Yes your honor and Dr. Massar's language when he said that RW would need identical treatment even if she had sustained no prior traumas was the exact finding this court found missing from the government's evidence in support of its first order in Anthony 1. So Dr. Massar isn't saying that RW needed identical treatment for Mr. Anthony's offenses as what she already needed for other trauma. Instead he was stating that RW's necessary treatment for losses caused by Mr. Anthony's offenses exclusively are is mutually exclusive treatment from losses from other treatment that she required for other sources of trauma. So it's the same treatment for Mr. Anthony whether or not she experienced some other trauma and because she did then in all likelihood or in his opinion she needs additional specific treatment for the other sources of trauma in her life just like a separate shark attack would require separate treatment and separate therapy to to stop the flashbacks and nightmares. All right let's turn let's turn to well before before I turn to Mr. Sandiford do any of the other two judges have any additional questions of the government before we well one very quick one chief which is Dr. Massar and his report and of course it matters greatly what the conduct was from Mr. Anthony but Dr. Massar says that Anthony fondled RW which I don't find anywhere in the record. I find in the record that the two young girls stripped to their underwear and that Anthony touched MM or touched her as the record says in the butt and touched RW non-descriptly doesn't say where how brushing by anything else but I don't see anything about fondling and fondling would seem pretty important as far as future therapy. What do we do with that if Dr. Massar got that wrong? Well my understanding is from the reports that we have in the interviews of RW that we have done that Anthony touched both her and MM. I don't know the specific description that she provided to Dr. Massar in the evaluation that he conducted of her. It's your burden it's your for you to say well maybe there's something that was said that's not in the record. What's in the record that shows fondling? Dr. Massar's description of what RW told him and he doesn't say that he doesn't say she told me that I was fondled he just declares it but I don't I don't mean to picket you on that but it's an important point for me as far as whether there was fondling and whether that's supportable. I don't know specifically what he was relying on when he said fondling. I know that from the record we have evidence that he touched both of the girls but in Dr. Massar's opinion it's the experience of knowing that she was rendered powerless and that he could do anything to her that causes the trauma not the specific touching that is the source of the trauma. Thank you. All right let's turn to Mr. Sanderford. Go ahead and unmute and you may proceed. Thank you. I'd like to start with Ms. Massar's report too. You know fundamentally his opinion was that RW would need identical treatment even if she had sustained no prior traumas. That's the sufficient cause test that this court rejected in Anthony 1. Under the sufficient cause test you remove all pre-existing harm and say and determine how much loss the defendant would have caused alone. That's what the sufficient cause test is. It's the same opinion that he offered in in resealed case which this court rejected. This court said that the expert had to or the government had to provide evidence of but-for causation which is an entirely different test. Under but-for causation you don't take out pre-existing harm and see what the defendant would have caused if nothing else had happened. You take out the defendant's conduct and see what losses wouldn't have occurred. It's an entirely different test and the questions that need to be asked under that standard are very different and weren't asked or weren't answered by this expert at all. What he should have determined is how much additional therapy in addition to the therapy that she was already going to need was she going to need because of what Anthony did. Same with medication. Same with lost wages. We don't have the answers to any of those questions because the expert didn't give any opinion on them. Well Mr. Anderson said that you could read the report to understand the report that these are on top of previous losses. Because he just doesn't say that. I mean all he says is that if you take out all pre-existing harm this is the amount of therapy she's going to need. Lifetime therapy. He never says that's on top of what's going to be needed otherwise. He doesn't give some top dollar figure of five million or six million that she needs total. He just never says anything like that. Instead the opinion that he gives is that taking out all pre-existing harm, assuming that nothing had happened to her before, this is the loss that Mr. Anthony's offense would have caused. That's the sufficient cause test as this court defined it in Anthony 1. Under your view of the doctor's report, would the first abuser who caused trauma, say the step grandfather or William Johnson, be the only one responsible for lifetime therapy and lost wages? Maybe, but probably not necessarily. I mean, under the but-for-cause test what you have to say is what additional therapy, what additional costs is she going to incur because of what Mr. Anthony did on top of everything else. So there probably has to be some kind of discount for that because she is going to need therapy regardless. His contribution under but-for-causation is likely very small, but we don't even know what what it is because the expert didn't offer any opinion on it. There was just nothing there for the district court to work with under the test this court announced in Anthony 1. He didn't give any opinion on but-for-causation. He instead went with sufficient causation, which produces this very large number but is the wrong test. If the expert had taken, let's say the expert came up with this number and I don't know how many perpetrators in this case, but let's say there are five and let's say the expert took 1.1 million and divided it by five. Do you think that would have been an appropriate restitution calculation or methodology? No, probably not because she sustained a lot of trauma before this case even started. I mean there was the case before with William Johnson where she was treated horribly by that man. There's her step-grandfather. I mean under a but-for-cause test you have to take those things into account and see what additional losses were caused by these defendants. Well, but what if what if Dr. Massar building on Chief Timkovich's question had said, you know, I've tried to disaggregate the harms as to each perpetrator, but given the therapy that's needed and given what I know about this case, it can't be done. Disaggregation can't be done. Would it be consistent with Anthony 1 to have some sort proportionate restitution under those circumstances? Probably not because Anthony 1 said you do have to disaggregate, but I don't think that, you know, the hypothetical would happen in the real world. I think that if an expert actually tried to go through and do but-for-causation, they could probably come up with some number. It doesn't have to be precise. It doesn't have to be exactly precise. It just has to be a reasonable estimate by preponderance of the evidence, you know. I mean, the number would likely be fairly small, but there's no reason to think that no number could be come up with at all. I'd like to briefly address that, you know, the government and the amicus argue that, you know, this is going to kind of wreak havoc in future cases under trafficking, prosecutions under the trafficking statute. That's just not a well-founded concern. I mean, the vast majority of these prosecutions are of the pimps and the traffickers, the people who are the primary sources of harm. Prosecutions of one-time customers like Anthony, I think, are very rare. I couldn't find any in my research. And again, there's no reason to think that some number couldn't be come up with for these defendants who have very limited involvement in the overall picture of abuse, but the expert just didn't try. The expert did a sufficient causation analysis, which this court had rejected in Anthony 1, and didn't try to come up with a figure under but-for causation. Well, Mr. Sanford, didn't the district court, though, you know, assuming we accept your argument about the deficiencies in the expert report, but didn't the district court nonetheless have enough to work with to come up with something? In other words, for example, in your brief, you say that the trafficking victims suffer additional losses with each incident of trauma. Why wasn't the government's proof that R.W. suffered at least some trauma from Mr. Anthony be enough to award some restitution? Because there was no evidence of any kind of number for the district court to work with, because the expert didn't offer one under the correct test. I mean, the government has the burden to prove losses. They can't just say, you know, if everybody agrees there are losses, but the government's unable to come up with any figure, how is the district court, was the district court just supposed to pick a number? I mean, that would be arbitrary. I mean, there has to be some evidence under the but-for causation test for the district court to work with, but there was nothing here. I think under these circumstances, the district court would have abused its discretion by awarding restitution because there wasn't any evidence under the correct test that was offered to it. Wasn't there, there was at least evidence of the ill-gotten gains somewhere in the record. I mean, the 30 or 40 thousand dollars in that, and there was, I think nobody disputes that she had been hospitalized and had some, you know, basic out-of-pockets, you know, even if you're talking about the future therapy that was the focus on future losses that were the focus of the report, there were some, you know, retrospective losses that I don't think anybody disagrees with. Why wouldn't that at least be a minimum that should have been awarded? Well, to start with the ill-gotten gains, Mr. Anthony's not liable for those. Those ill-gotten gains were from the larger conspiracy that this court said he wasn't responsible for. So, you know, the ill-gotten gains are out. The government didn't ask for ill-gotten gains in their briefing on remand. They asked for an award consistent with Ms. R's report. Ms. R's report didn't address ill-gotten gains. So, I think, you know, on the merits, Mr. Anthony's not liable for those because this court has already said he wasn't responsible for the losses caused by the larger conspiracy. That's what those ill-gotten gains are. They're all the money that Maurice Johnson made throughout the course of the entire thing. As to the out-of-pocket expenses, like hospitalization, there was really nothing to tie Mr. Anthony to any of that either. I mean, that was when she was rescued from Maurice Johnson. No expert has ever suggested or said that Mr. Anthony, in particular, those losses wouldn't have occurred but for Mr. Anthony's conduct. So, I don't think either one of those... Well, how about in the face of, you know, some harm, some losses, why was it not an abuse of discretion for the district court to, you know, given her problems with the Ms. R report to have an evidentiary hearing? You had asked for one. Why went in the face of some evidence of loss but of a failure of, you know, quantification? Why but, you know, let's have an evidentiary hearing and boil this down in some fashion. I mean, you know, trying to figure out what the just result here is and, you know, maybe that gets us to a point, as Judge Mathison said, somewhere between zero and 1.1 million in a reasonable fashion. But the judge basically, you know, pulled the plug on restitution. Why wasn't there some obligation to do something to figure it out? Well, I think the most simple answer is because the government's motion and its expert report hadn't established any losses under but-for causation. I mean, if the government doesn't prove loss, the district court's not required to pull its expert in and cure the deficiencies in this report. I mean, that's not how the adversarial system works, and it's not how the statute works. The burden's on the government to prove it by the preponderance of the evidence. And to say the district court was required to hold a hearing when the government utterly failed to prove loss under the pleadings that it's filed, I can't imagine that that would be an abuse of discretion. There needs to be some evidence in the record submitted by the government that would support a loss amount, and there wasn't here because the expert never offered any opinion under but-for causation, only under sufficient But you do agree there that Mr. Anthony caused incremental harm. Yes, I mean, we agree he caused incremental harm, but whether he caused incremental losses, I mean, we're talking financial losses, not just harm. Restitution is not for pain and suffering. Restitution is for financial losses. Congress could have written it to include pain and suffering, and it didn't. We do agree there was additional harm, but whether there's additional losses, we don't know, and we have not conceded That's really the question, and that's what's bothering me. If you go to 1593, and then that takes you to 2259 for full amount of victims' losses, and in paragraph C2, we get an itemization of what qualifies as a category of loss, and none of those are emotional harm to the victim. Instead, we're talking about therapy, we're talking about lost income, those sorts of things, but there is that word leading into the six categories, including. Does that leave the district court room to say this really can't be a freebie? You can't harm someone who is so grossly harmed already by previous conduct that it's a freebie, and so I'm going to use including to say there is an effect that the victim is going to have to deal with for the rest of her life based on your episode. Therefore, in this massive, massive number, I'm going to add another $3,000, for instance, a floor, like in the child porn statutes, so that there's something. Is that, I'm not saying the district court abused its discretion by not making including, bolstering it in that fashion, but is that a reasonable way to handle this? You know, I don't know. I think probably it isn't. I haven't researched that, but the restitution statute is about compensating for financial harm. I don't think there's room in the statute to interpret it to kind of incorporate sort of, well, you've done harm until you have to pay some money. I think there needs to be some identification of financial losses that are attributable to the defendant's conduct, so probably not. I mean, certainly that argument wasn't raised below. I don't think the district court would have abused its discretion by not doing that, given that it wasn't argued, but I guess to directly answer your question, I don't think that's permissible under the statute. Unless the court has further questions, I proceed to remain in my time. All right. Thank you, Mr. Sanford. If the courtroom deputy could give her four minutes for rebuttal, you may proceed when you're ready. Thank you, Your Honor. I think that when Judge Phillips said that there's an argument to be made that this can't be a freebie, I think that that's really important here, in that everyone agrees that there were losses caused to R.W., that she does require some amount of specific therapy for this, for flashbacks of Mr. Anthony's specific experience, which she was there on two separate occasions on that night, both times exposing herself to potential violence and harm and being rendered totally powerless, which is the source of the trauma, according to Dr. Massar. Well, could I just ask you, I'm still having trouble with, in the report, the reference to that R.W. would need identical treatment. I mean, I understand your argument about maybe therapy needed for specific flashbacks relating to Mr. Anthony, but where in the report is there any opinion expressed along those lines? Where can we find that in Dr. Massar's report? Yeah, so Dr. Massar's report focuses, several times indicates that his report is focused on the costs of making R.W. whole for the time she was trafficked to Mr. Anthony, and he specifically described that each occurrence of abuse creates a separate and intense traumatic experience and serial traumas are equally traumatic. And then he describes the harm inflicted by Mr. Anthony on page, record, volume four, page 245, where he explained that she was emotionally traumatized and her basic dignity and rights were diminished by Mr. Anthony because there was a discrete expectation that she was present for sex with the understanding that she lacked power or autonomy over what he did to her. And there was a separate component to trauma in that when he ultimately chose M.M., she felt guilt and responsibility for that, which is traumatic, and also relief that it wasn't her that was chosen. So the experience with Mr. Anthony causes specific harm to R.W. that causes specific flashbacks and specific nightmares, as indicated in her victim impact statement. The line regarding identical treatment is directly from this court's opinion in which the court found that the government lacked a finding or lacked evidence that R.W. would need identical treatment for Mr. Anthony's offenses, even if she had sustained no prior trauma. And Dr. Massar made that finding because it was lacking in the first record that this court considered. And when he was doing that, he was saying identical treatment for this specific harm and trauma and for this specific treatment, even despite her past harm or even if she had no prior harm. If I could, I think I followed that argument on the, I'm just looking at the last page of Massar's report. I think that might work for the psychiatric portion. But he also has a line item for medications, tutoring, and lost wages. Those don't seem to be tailored to Anthony. Those seem to be just like lost wages. I mean, I think that's a lifetime of lost, her entire lifetime of lost wages. How can that be justified as being attributable solely to Anthony under a but-for test? I think that's a great question and a question that the district court should have answered. But evidentiary gaps or problems with an estimate such as Dr. Massar's should not let Anthony off scot-free. It shouldn't result in his conduct being a freebie and the harm that he imposed and the losses he inflicted on RW being rendered. I agree with that. But on the other hand, our cases, and I guess I've lost a few of these cases over the years, but our cases say that it's plain error to award restitution above actual losses. It'd be plain error. It seems like you've backed the district court into a position where Mr. Sandefur would be fighting for a plain error reversal if she had adopted this number. That really comes back to the burden of proof and the reliability of the evidence that's presented to the district court. I think this is a hard case because of that. That's the record we have. I think that's fair. Ms. Bryant, the rural physician's assistant that provided an opinion had calculated a range up to over $5 million. I think that that provides some corroborating evidence that what Dr. Massar has calculated is a portion of the overall losses experienced by this child who has experienced profound losses in her life and needs all kinds of treatment and therapy and assistance. The harm here is that we have a decision where she has zero dollars when there is evidence and agreement that she experienced some losses. It was the district court's responsibility to resolve uncertainties and to adjust the government's request to an amount that is a reasonable estimate of losses attributable to Mr. Anthony. I don't know if did she receive restitution from other perpetrators? So there are orders for restitution for Mr. William Bontrail Johnson in the earlier case and for Mr. Anthony's co-conspirators. That doesn't mean that those have been paid. Of course, under 3664 F, the court is not supposed to consider other sources of recovery in awarding restitution for a particular perpetrator. There's no joint and several liability possible under the statute? There was joint and several liability imposed in the first instance between Mr. Anthony and his co-conspirators, Maurice Johnson, Tanya Gumm, Mr. Duong, Mr. Baker, some other one-time customers. But this court in the first Anthony decision said that that joint and several liability was error to impose joint and several liability for the full scope of the conspiracy as opposed to the conspiracy proven at trial in which Mr. Anthony participated. But it wasn't plain error. Judge Matheson, did you have something? I just had a quick question. Do you agree with Mr. Sandiford's distinction between harms and losses? I do not. And in fact, this court's decision on page 23 uses the words harms and losses interchangeably. At least for our purposes, when we use the word harms, we mean the same thing as losses, that they are losses is the same thing as losses. So, I don't know if that makes sense. I don't know how to quantify that. Okay. Thank you, counsel. It looks like the time has expired. I appreciate our ability to do this out of sequence. You know, Zoom isn't optimal, but it gets us where we try to get. So, anyway, the case is submitted. Counsel are excused.